SONYA MARASHLIAN & another[1] v. ZONING BOARD OF
APPEALS OF NEWBURYPORT & others.[2]

Essex. September 13, 1995. - January 22, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Zoning*, Person aggrieved, Appeal, Parties, Variance, Frontage. *Practice,
Civil*, Findings by judge, Zoning appeal, Standing, Parties.

A Superior Court judge, hearing an appeal from a decision of a board of
zoning appeals, did not err in concluding that certain abutters had
standing to contest the actions of the board and that the board had not
exceeded its authority in granting a special permit and two zoning vari-
ances for the construction of a hotel. [722-727] O'CONNOR, J., dissent-
ing, with whom LYNCH & GREANEY, JJ., joined.

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 31, 1989.

The case was heard by *John P. Sullivan*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Mark J. Guay* for the plaintiffs.

*Timothy J. Courville* for Foster Properties, Ltd.

*Judith H. Mizner*, for Lisa L. Mead, amicus curiae, sub-
mitted a brief.

LIACOS, C.J. The defendants Newburyport Redevelopment
Authority (Authority) and Foster Properties, Ltd. (Foster),
sought and received a special permit and two zoning vari-
ances from the zoning board of appeals of Newburyport
(board), so as to construct a hotel in Newburyport's down-

---

[1] Christopher L. Snow. The city council of Newburyport and the
planning board of Newburyport were original plaintiffs in this suit and did
not appeal from the decision of the judge in the Superior Court
Department.

[2] Newburyport Redevelopment Authority and Foster Properties, Ltd.

town waterfront area. The plaintiff abutters appealed from the board's decision under G. L. c. 40A, § 17 (1994 ed.),[3] to the Superior Court. After a contested evidentiary hearing, a Superior Court judge found that the abutters had standing to contest the board's action, but that the board did not exceed its authority in granting the requested special permit and variances. The Appeals Court, in a rescript opinion, affirmed the judgment based on its conclusion, contrary to the finding of the Superior Court judge, that the plaintiffs lacked standing under G. L. c. 40A, § 17. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 37 Mass. App. Ct. 931, 933 (1994). We granted the plaintiffs' application for further appellate review. We affirm the judgment of the Superior Court. We state our reasons.

The city council of Newburyport adopted an urban renewal plan in 1965 to revitalize Newburyport's downtown business district, then in "substantial economic decline and disrepair." The last remaining parcel owned by the Authority and designated for urban renewal is the subject of this litigation, a vacant lot located on the Merrimack River.[4] In 1987, the Authority authorized Foster to develop a hotel on the lot. The planned hotel was to include 123 guest rooms, a restaurant, a banquet room, and meeting rooms. In 1989, the Authority and Foster applied to the board for a special permit

---

[3]General Laws c. 40A, § 17 (1994 ed.), reads in relevant part: "Any person aggrieved by a decision of the board of appeals or any special permit granting authority or by the failure of the board of appeals to take final action concerning any appeal, application or petition within the required time . . . concerning any application for a special permit within the required time, whether or not previously a party to the proceeding, or any municipal officer or board may appeal to the land court department, the superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. . . . The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled."

[4]For an extensive recitation of the history of the locus and of earlier litigation involving it, see *Newburyport Redevelopment Auth.* v. *Commonwealth*, 9 Mass. App. Ct. 206 (1980).

to allow hotel use on the lot, and two zoning variances. The variance applications sought permission to develop the project with less than the required 959 parking spaces and 120 feet of frontage. The plaintiffs own commercial and residential property adjacent to and directly across the street from the proposed hotel.

Only a "person aggrieved" may challenge a decision of a zoning board of appeals. G. L. c. 40A, § 17. *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n, Inc., ante* 106, 107 (1995). *Green* v. *Board of Appeals of Provincetown,* 404 Mass. 571, 572 (1989). A plaintiff is a "person aggrieved" if he suffers some infringement of his legal rights. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 430 (1949). The injury must be more than speculative, *Tsagronis* v. *Board of Appeals of Wareham,* 415 Mass. 329, 335 (1993) (Abrams, J., dissenting), but the term "person aggrieved" should not be read narrowly. *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 204 (1957). *Cummings* v. *City Council of Gloucester,* 28 Mass. App. Ct. 345, 350 (1990). Abutters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption they are "persons aggrieved." See *Watros, supra* at 111; *Marotta, supra* at 204. If standing is challenged, the jurisdictional question is decided on "all the evidence with no benefit to the plaintiffs from the presumption." *Id. Barvenik* v. *Aldermen of Newton,* 33 Mass. App. Ct. 129, 131 (1992). A review of standing based on "all the evidence" does not require that the factfinder ultimately find a plaintiff's allegations meritorious. To do so would be to deny standing, after the fact, to any unsuccessful plaintiff. Rather, the plaintiff must put forth credible evidence to substantiate his allegations. In this context, standing becomes, then, essentially a question of fact for the trial judge. See *Bedford* v. *Trustees of Boston Univ.,* 25 Mass. App. Ct. 372, 377 (1988).

The plaintiffs here are abutters who received notice of the board's proceedings. Thus, they were rebuttably presumed to have standing. Each owns property across the street from the

proposed hotel. The plaintiffs' properties are in a zoning district (downtown business) that is more restricted than the zoning district in which the hotel is proposed (waterfront mixed use). See *Circle Lounge & Grille, Inc., supra* at 432. The plaintiffs' standing was challenged and thus the jurisdictional question was decided on all the evidence.

The plaintiffs claim to fear increased traffic and decreased parking availability due to the defendants' development of the lot. Such concerns are legitimately within the scope of the zoning laws. *Circle Lounge & Grille, Inc., supra* at 427. *Bedford* v. *Trustees of Boston Univ., supra* at 374, 376-377. The judge found that the hotel project will result in a "minimal increase in traffic and a decrease in the number of currently available public parking spaces." This finding is supported by the record. There is also evidence to support the judge's findings that Marashlian's property was "within the scope of concern of the Zoning Enabling Act" and that Snow had an "interest in protecting his residential and retail tenants, the clients who visit his own place of business, his employees and himself from any increased traffic and congestion."

The findings of the judge should not be overturned unless "clearly erroneous." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). On review of the record, we conclude that the judge's findings were not clearly erroneous. See *Bedford, supra* at 377 (abutter's concerns of increased pedestrian and vehicular traffic, loss of parking, and potential threats to pedestrian safety were sufficient to uphold abutter's standing even in the face of evidence that "proposed construction would have no adverse impact on the plaintiff"); *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707, 709 (1984), quoting *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 629 (1977) (determination of "aggrieved" matter of degree calling for discretion rather than inflexible rule). The cases relied on by the judge are consistent with the principle that "person aggrieved" should not be construed narrowly. *Marotta, supra* at 204. *Godfrey* v. *Building Comm'r of Boston*, 263 Mass. 589, 591 (1928).

The Appeals Court denied the plaintiffs standing to challenge the proposed hotel, stating that *"[b]ased on the judge's findings*, Snow and Marashlian have failed to make a 'specific showing that the plaintiffs will either be injured or that such an injury would be special and different from that which others throughout the zone would experience. . .'" (emphasis added). *Marashlian v. Zoning Bd. of Appeals of Newburyport*, 37 Mass. App. Ct. 931, 933 (1994), quoting *Cohen v. Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. 619, 623 (1993). As discussed, the plaintiffs must put forth credible evidence to substantiate claims of injury to their legal rights. The plaintiffs met that burden here. The record shows that both plaintiffs currently utilize public street parking to meet their business and personal needs. The judge found that traffic after the proposed hotel construction would increase, if minimally, and that some public parking spaces would be lost. These fears, based on all the evidence, are neither speculative nor too remote to make the plaintiffs persons "aggrieved." See *Boston Edison Co. v. Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977). That the judge ultimately found the reduced number of spaces provided by the variance to be adequate does not defeat a claim of injury to legal rights of the type intended to be protected by the zoning enabling act. Such a finding goes to the plaintiffs' success on the merits and not to their ability to challenge acts of the board.[5]

---

[5]The rescript opinion of the Appeals Court in *Riley v. Janco Cent., Inc.*, 38 Mass. App. Ct. 984 (1995), is consistent with our decision. In that case, the Superior Court judge granted summary judgment for the landowner defendant (Janco) on the issue of the plaintiff abutter's standing to challenge the grant of variances and of a special permit. The variances allowed the defendant to erect nonconforming signs on the property and to pave a parking area within four, rather than the required five, feet of the building. The plaintiff's affidavits failed specifically to address how the signs or the parking area would affect the plaintiff's property interests. In a deposition not part of the record (and therefore properly not considered on the motion for summary judgment), the plaintiff appears to have stated that one of the variances "probably makes room for two-way traffic," thereby allowing more lights from automobiles to shine into the plaintiff's home. The judge found that such an assumption was speculative, and even when considered

The Appeals Court relied primarily on *Barvenik v. Aldermen of Newton, supra* at 131-133, to deny standing.[6] That case, and several decided after it, seem to require that a plaintiff, in order to obtain standing, show a substantial likelihood of harm greater than that which could result from a use of the property permissible as of right. This line of cases appears to be a departure from those previously decided at the time of the judge's decision. We decline to adopt such a rule, except to the extent that it requires specific facts to establish perceptible harm.[7] Although the magnitude of the threat of harm to a potential plaintiff in relation to the threat of harm from a use permissible as of right is a factor that may be considered, it is not dispositive of the standing issue. See *Tsagronis, supra* at 334-335 & n.1 (Abrams, J., dissenting)[8]; *Circle Lounge & Grille, Inc., supra* at 430.

---

in addition to the parties' affidavits, failed to establish what the Appeals Court referred to as a " 'plausible claim of a definite violation of a private right, property interest, or legal interest.' *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989)." *Riley* v. *Janco Cent., Inc., supra* at 985. Unlike the tangible loss of parking spaces and increased traffic Marashlian and Snow will experience, the possibility that headlights from automobiles in an adjacent parking lot will shine in the plaintiff's window is just the type of "uncorroborated speculations" sought to be avoided by the standing requirements of G. L. c. 40A, § 17 (1994 ed.) See *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 136 (1992).

Additionally, the judge found that the nonconforming use of the lot was statutorily protected as preexisting, and thus found it unnecessary to decide the issue whether the plaintiff had standing to challenge the grant of the special permit. *Riley* v. *Janco Cent., Inc., supra* at 986.

[6]*Barvenik* v. *Aldermen of Newton, supra,* was decided after the judge issued his opinion in this case.

[7]See *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688 (1994); *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. 619, 621-622 (1993); *Jaffe* v. *Zoning Bd. of Appeals of Newton*, 34 Mass. App. Ct. 929 (1993).

[8]The standing issue in *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 330 n.4 (1993), involved evidence of a partially-obstructed view, together with the perceived decline in their property's value. While the dissent argued in that case that those concerns were insufficient to confer standing on the plaintiff abutters, the parking and traffic concerns involved here are clearly of the type envisioned by the Zoning Enabling Act.

The Superior Court judge made extensive findings with regard to the merits of the plaintiffs' claims, all of which are supported by evidence in the record. These findings will not be disturbed unless clearly erroneous. Mass. R. Civ. P. 52 (a). See *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977) (phrase "clearly erroneous" defined). The judge's thirty-three page opinion shows a thorough analysis and discussion of all relevant issues in this case.

We discuss each issue here briefly. The judge ruled, inter alia, that the use of the locus for a hotel was protected as of right under G. L. c. 40A, § 6 (1994 ed.).[9] The locus was endorsed "approval not required" (ANR) in 1987, prior to the amendment of the zoning laws changing the district in which the lot is located from "downtown business" (in which a hotel is permitted as of right) to waterfront mixed-use (in which a special permit is required for hotel use). Thus, the "zoning freeze" was in effect for a three-year period, allowing development of the lot as a hotel as of right. No special permit was required for the locus to be used for a hotel as of right.

The judge found that the proposed hotel site is subject to unique conditions, not the result of the defendants' actions,

---

We note also that in *Tsagronis, supra,* the court concluded, notwithstanding the dissent (in which the author of this opinion joined), that the evidence was sufficient to give standing to the plaintiffs. The court's decision is, of course, the law by which we abide.

[9]Under that statute, in conjunction with G. L. c. 41, § 81P (1994 ed.) (subdivision control law), a person may seek a declaration by the planning board in a city or town in which the subdivision control law is in effect, that a plan does not require approval under the subdivision control law. A majority of the board may endorse the plan as not requiring approval, or a majority of the board may authorize a person to endorse such a plan. An "approval not required (ANR)" endorsement creates a "zoning freeze," in which the laws applicable to the lot at the time of endorsement remain applicable for a period of three years. G. L. c. 40A, § 6.

The plaintiffs' claim that the chairman of the planning board was not authorized by the then current majority of the board (albeit authorized previously) and had no authority to endorse the plan in 1987 is supported neither by the language of the statute nor by common sense. The judge correctly ruled the ANR endorsement to be valid.

which render it appropriate for a parking variance.[10] He further found that as a result of these conditions, it would be "economically impractical" and not "economically feasible" to provide the required 959 parking spaces. These findings are supported by the record. The plaintiffs argue that no variance should be granted unless the property would be virtually unusable without a variance, and that the proposed hotel site could be used as a restaurant, retail space, or for parking. We reject the proposition that a variance is unwarranted if any other possible use can be made of a site. Cf. *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 336-337 (1958). The judge determined that such other uses, given the already existing number of establishments in the area, would not be economically feasible. His conclusion that literal enforcement of the zoning laws would create a substantial hardship, financial or otherwise, to the owners of the property is neither clearly erroneous nor does it constitute an error of law.

Finally, the judge ruled that no frontage variance was required because once Ferry Wharf Way is conveyed, as required by stipulation, it will constitute a street for purposes of meeting the frontage requirement.[11] We believe that the

---

[10]These findings include the fact that the "public trust doctrine" precludes private use of land below the low-water mark, that development is subject to approval of the Massachusetts Department of Environmental Quality Engineering pursuant to G. L. c. 91 (1994 ed.), that the locus is situated in an historic district, that an existing stipulation forbids certain construction that would obstruct the waterfront view (thus precluding construction of an above-ground garage), that the parcel is surrounded by historic buildings and a boardwalk precluding waterfront access, and certain topographic and soil conditions resulting from the parcel's low elevation make a garage with 959 parking spaces nonfeasible.

[11]The plaintiffs claim that the issue whether a frontage variance was unnecessary was not raised before the board and therefore is improperly before this court. Although an appeal to a board from the action of an administrative officer is limited to the content of the application, see G. L. 40A, § 15 (1994 ed.); *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 345 (1985), that rule is not implicated here. The issue was decided at trial and is properly before this court. See *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 9 (1981) ("[A] nonjurisdictional issue not presented *at the trial level* need not be considered on

street need not meet current planning board standards pro-
vided it is sufficiently usable to meet the definition of "street"
in the Zoning Ordinance of Newburyport.[12] There is evi-
dence in the record that Ferry Wharf Way is of historic ori-
gin and is presently of suitable width and grade to be accessi-
ble by four-wheel vehicles as well as pedestrians, and public
access will be forever protected under the stipulation. There
was no error.

Concluding that the Superior Court judge's findings and
rulings as to standing and to the merits of the plaintiffs' chal-
lenge were not in error, we affirm the decision of the Supe-
rior Court.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch and Greaney,
JJ., join). The Superior Court judge "rule[d] that Christo-
pher Snow and [Sonya] Marashlian have standing to main-
tain this action as 'aggrieved persons' under G. L. c. 40A,
§ 17." Relying on *Sherrill House, Inc.* v. *Board of Appeal of
Boston*, 19 Mass. App. Ct. 274, 276 (1985), the judge rea-
soned that "[e]ven if Snow and Marashlian were to prove no
more than the likelihood of fear of harm on the part of them-
selves, their visitors, clients and employees, they have stand-
ing to maintain this action." The judge's reasoning and rul-
ing were incorrect. The judge should not have relied on
*Sherrill House, Inc., supra.*

In *Sherrill House, Inc., supra,* the plaintiff operated a
nursing home as a nonconforming use in a residential dis-
trict. The Appeals Court held that the plaintiff lacked stand-
ing to challenge a decision of the Boston board of appeal

---

appeal" [emphasis added]), quoting *Royal Indem. Co.* v. *Blakely*, 372
Mass. 86, 88 (1977).

[12]The ordinance defines "street" as "a public thoroughfare which has
been accepted for public use; an existing private thoroughfare in use which
has not been accepted for public use; or a planning board approved sub-
division street."

granting to the owner of neighboring property a permit to change the use of that property from a hospital to a correctional facility. *Id.* at 275-279. The Appeals Court concluded that the plaintiff lacked standing to challenge the board's action because the plaintiff was "operating under a nonconforming use." *Id.* at 276. The court observed in dictum, however, that the plaintiff would have had standing to challenge the board's decision if the plaintiff had not been operating under a nonconforming use and had proved a likelihood that, following the conversion of the neighboring hospital to a correctional facility, the plaintiff's nursing home clients, visitors and employees would fear that they would become assault victims as a result of a correctional facility being located next door. Clearly, fear of that kind would tend to diminish the market value of the plaintiff's property. However, it does not follow that, to have standing to challenge the action of the defendant board of appeals in this case, the plaintiffs needed only to prove the likelihood that, in advance of the zoning board's decision being implemented, the plaintiffs, their clients, visitors or employees feared that the decision would result in an increase in traffic or a decrease in parking spaces.

In a single proceeding, the judge in the Superior Court heard evidence that bore not only on the issue of standing, but also on the substantive issues relating to whether the zoning board of appeals of Newburyport had exceeded its authority in granting a special permit and two variances to the Newburyport Redevelopment Authority and Foster Properties, Ltd. The judge concluded that the plaintiffs had standing to challenge the zoning board's decision, but that the decision was lawful. The court affirms that decision. In my view, the plaintiffs did not have standing and therefore the court did not have jurisdiction to review the board's decision. *Riley* v. *Janco Cent., Inc.,* 38 Mass. App. Ct. 984, 985 (1995). I would vacate the judgment and dismiss the action.[1]

---

[1]As a practical matter, the defendants "prevail" whether the court affirms the judgment, as it does here, or the case is dismissed, as I advocate.

As the court says, *ante* at 721, "Abutters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption they are 'persons aggrieved.' [*Watros* v. *Greater Lynn Mental Health & Retardation Ass'n, ante* 106, 111 (1995)]." When a defendant challenges the plaintiff's standing and supports that challenge with evidence of lack of aggrievement, the jurisdictional issue must be decided on the basis of the evidence without reference to the presumption. *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957). *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 131 (1992). *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 376 (1988). *Sherrill House, Inc.* v. *Board of Appeal of Boston, supra* at 275.

In this case, the challenge to the plaintiffs' presumed aggrievement (and therefore standing) was supported by evidence of nonaggrievement. The presumption of standing therefore disappeared and the plaintiffs had the burden to prove to the judge the necessary facts to establish it. *Barvenik* v. *Aldermen of Newton, supra* at 131-132. The plaintiffs failed to carry that burden because, although the judge erroneously concluded that the plaintiffs had standing, his findings established the opposite.

The judge made the following relevant findings, all of which were warranted by the evidence: (1) "The number of parking spaces to be provided for the Project will be sufficient to meet the parking demands generated by the hotel. Therefore, the Project will not add to any existing onstreet parking congestion in the area"; (2) "[T]he supply of public parking spaces in the area will be adequate to meet the demand"; (3) "With respect to traffic, the [P]roject is expected to minimally increase traffic volumes and . . . site-generated traffic will not have a major impact on area traffic patterns. Any adverse traffic impacts will be controlled by implementing certain mitigation measures." The judge's further find-

I write separately only because I believe the court's treatment of the standing issue is incorrect and may have an adverse impact on the development of the law.

ing, to which reference is made in the court's opinion, *ante* at 723, that the project will result in a decrease in the number of currently available public parking spaces (referred to in the court's opinion, *ante* at 723-724 n.5, as "the tangible loss of parking spaces") is of no consequence in view of his findings numbered (1) and (2) above. Decrease in a surplus of available parking spaces, leaving a supply adequate to meet the demand, is not the type of harm G. L. c. 40A is designed to protect against. The same may be said of a minimal increase in traffic in a business area which "will be controlled by implementing certain mitigation measures."

Apart from evidence concerning traffic and parking, there was no evidence, and there were no findings, suggesting that the zoning board's actions are likely to result in harm to the plaintiffs' legally protected interests. Consequently, in my view, the Appeals Court correctly concluded, contrary to the legal conclusion reached by the trial judge (although the aforementioned findings were warranted), and by this court on appeal, that the plaintiffs lacked standing to bring this action. The Superior Court, therefore, lacked jurisdiction to review the zoning board's actions. The judgment should be vacated and the action should be dismissed. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 433 (1949).