ARTHUR SEDELL, trustee,[1] & another[2] vs. ZONING BOARD OF
APPEALS OF CARVER.

No. 08-P-890.

Plymouth. February 12, 2009. - June 22, 2009.

Present: KANTROWITZ, GRAINGER, & SIKORA, JJ.

*Alcoholic Liquors. Zoning,* Special permit.

In proceedings arising from a local zoning board's denial of the plaintiffs' ap-
    plication for a special permit to sell beer and wine from a vacant store area
    in their strip mall, a District Court judge did not err in concluding that the
    board's decision was based on a legally tenable ground (i.e., the proximity
    of public schools, a day care center, and a special needs school to the
    proposed store), and correctly came to the ultimate conclusion that the rec-
    ord supported the board's denial of the special permit. [453-455]

CIVIL ACTION commenced in the Wareham Division of the
District Court Department on June 26, 2006.

The case was heard by *Brian R. Merrick,* J.

*Paul W. Patten* for the plaintiffs.

*Robert H. McKertich* for the defendant.

GRAINGER, J. The plaintiffs own a small strip mall in Carver,
where they operate a pharmacy. They wished to sell wine and
beer from a currently vacant store area in the strip mall, and
sought a special permit from the zoning board of appeals of Car-
ver (board). Relying largely upon the proximity of the site to
several schools and a day care center, the board denied the special
permit. On appeal pursuant to G. L. c. 40A, § 17,[3] a District
Court judge determined that the board had identified no
"detrimental impacts" and thus failed to weigh such impacts

---

[1] Of C.A.S.T. Realty Trust.

[2] Sandra Sedell, as trustee of C.A.S.T. Realty Trust.

[3] An earlier denial by the board resulting in a stipulated remand is not at
issue here.

against the proposal's benefits as required by the Carver zoning by-law, and remanded for further consideration. On remand the board held another hearing and again denied the special permit; it cited the nearby schools and day care center, this time also citing a special needs school that had been in the planning stage during the board's previous deliberation, and had since opened in the same strip mall. The same District Court judge reviewed the second denial by the board and, after a nonevidentiary hearing, concluded that the board had sufficiently identified a detriment and conducted the required balancing test. On appeal, the plaintiffs challenge the remand, arguing that the judge should have instead ordered the board to grant the special permit. Additionally, the plaintiffs contend that the judge should have granted their motion to annul the board's denial of their special permit and should not have dismissed the action. We affirm.

*Background.* We recite pertinent facts as found by the judge after trial. The plaintiffs own a small strip mall on a rural portion of Route 58 in Carver, where they operate a pharmacy. The strip mall consists of two buildings and a parking lot. The main building contains the plaintiffs' pharmacy on one end, a vacant store area in the middle, and a child day care center on the other end. The plaintiffs planned to use the vacant space for a beer and wine store which would be connected to the pharmacy as a one-stop shopping center.

The other building in the strip mall was vacant at the time of trial, but the plaintiffs had entered into an agreement to lease the building to a small special needs school. Across the highway were two Carver town schools, a primary school and an elementary school. The pharmacy sold items of interest to children, although the highway lacked traffic lights or crosswalks to facilitate foot traffic from the schools.

In its first decision, the board relied upon the proximity of the schools and the day care center and concluded that the strip mall "would be an inappropriate location for additional beer and wine sales." The board also dismissed any possible benefits to the community, as several full service package stores already were located on the highway.

The trial judge disagreed and determined, in what he characterized as a factual finding, that the proposed use would have

no detrimental impact on the town. In so doing, he opined that "[w]hile the pharmacy sells items of interest to children, the absence of pedestrian access and the supervised nature of the special needs school and day care center make it highly unlikely that any children in the store will be unsupervised."[4] The judge also relied upon the trial testimony of the chairman of the board, who testified as an expert on the characteristics of the town and the town zoning by-law, that the proposed use would be neither a benefit nor a detriment to the schools. Having found no detrimental impact, the judge concluded that the board had not fulfilled its obligation under section 5330 of the by-law to determine whether the benefits of the proposed use outweigh its detrimental effects.[5] Thus, the board had based its decision on an "untenable ground." However, the judge remanded for further consideration, indicating that the board was "free to find otherwise but it has not identified any detrimental impact. . . . It is still for the [board] to perform the balancing test, so long as the detrimental impacts are identified or appear in the record."

On remand, the board conducted another hearing and issued another decision, largely echoing the reasoning of its previous

---

[4]The judge referred in his decision to the special needs school that, by the time of trial, had been approved to open in the strip mall. The special needs school was not considered by the board in its first decision.

[5]The key governing sections of the Carver zoning by-law read as follows:

"5330. *Criteria.* Special permits may be granted by the [board] upon its written determination that benefits of the proposed use outweigh its detrimental impacts on the town and the neighborhood, in view of the particular characteristics of the site, and of the proposal in relation to that site. In addition to any criteria set forth in specific provisions of this by-law, the determination shall include consideration of each of the following:

"5331. Social, economic, or community needs which are served by the proposal;

"5332. Traffic flow and safety, including parking and loading;

"5333. Adequacy of utilities and other public services;

"5334. Neighborhood character and social structures;

"5335. Impacts on the natural environment;

"5336. Potential fiscal impact, including impact on town services, tax base, and employment."

decision, and again citing the proximity of the schools and day care center, along with the existence of other package stores in the area. The board also added to its consideration the proximity of the special needs school, located in the same strip mall. The District Court judge reviewed the board's second decision on the plaintiffs' motion to annul, and this time concluded that, although he did "not find [the board's] claim of detrimental impact persuasive, . . . [i]t seem[ed] to have at least gone through the motions of considering and reporting on whether 'the benefits of the proposed use outweigh its detrimental impacts on the town.' " He thus denied the motion to annul and dismissed the case.

*Discussion.* On appeal from the decisions of the board, "the court was required to engage in a process that was in part deferential to the board and in part not." *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 72 (2003). The judge must "find the facts de novo and give no weight to those the board has found" and "must affirm the board's decision unless it finds that denial of the application was 'based on a legally untenable ground, or [was] unreasonable, whimsical, capricious or arbitrary.' " *Ibid.*, quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970). As we explained in *Britton*, the judicial review typically involves two inquiries. The first requires a legal analysis of whether the board's decision was based on a "standard, criterion, or consideration not permitted by the applicable statutes or by-laws"; in other words, whether it was based on a "legally untenable ground." *Id.* at 73. The second inquiry is much more deferential than the first, and requires the court to determine whether any "rational view of the facts the court has found supports the board's conclusion that the applicant failed to meet one or more of the relevant criteria found in the governing statute or by-law." *Id.* at 75.

As to the first inquiry, in both of its decisions the board relied upon the proximity of the schools and the day care center to the proposed beer and wine store as a reason for denying the permit, apparently viewing it as a detrimental impact. This was a proper consideration for the board. Section 5330 of the Carver zoning by-law requires the board to consider the "particular characteristics of the site, and of the proposal in relation to that

site." Section 5334 specifically directs that the board also con-
sider the "[n]eighborhood character and social structures." The
board was permitted to consider the proximity of the two schools,
the day care facility, and the special needs school in evaluating
the character of the neighborhood. Compare *Connolly* v. *Alco-
holic Bevs. Control Commn.*, 334 Mass. 613, 617 (1956) (prox-
imity of schools relevant in approval or denial of license to sell
alcohol).

Having established that the board applied a proper standard,
we consider whether any rational view of the facts found by the
District Court judge supported the board's determination that
the benefits of the proposed use did not outweigh its detrimental
impacts on the town and the neighborhood. We consider the
factual findings in both the first and the second decision of the
District Court judge. We first address the judge's "finding" in
his first decision that the proposed use would have no detrimental
impact on the town. Despite the characterization used by the
judge, this was not a finding of fact; it was a conclusion based on
(or, in this case, notwithstanding) the factual finding that there
were schools nearby. By concluding in his first decision that
there was no detriment despite the existence of facts which could
support the opposite conclusion, the judge "effectively [did] strip
the board of its discretionary power of denial." *Britton* v. *Zoning
Bd. of Appeals of Gloucester, supra* at 74 n.7.[6]

Upon consideration of the remaining factual findings, we con-
clude, as did the judge ultimately, that they support the board's
denial of the special permit. The proposed beer and wine store
would be located in the same small strip mall as a special needs
school for teenagers and a day care facility. It would also be
across the street from a primary school and an elementary school.
Additionally, the pharmacy adjacent to the proposed location sells
items of interest to children.[7] The board reasonably foresaw the

---

[6]This is made all the more clear by the judge's adoption of the expert
witness's testimony that the proposed use would have no detrimental impact
on the schools. Expert witnesses generally testify to opinion, not fact.

[7]Although the judge discounted the likelihood that children would be in the
store unsupervised, "it is 'the board's evaluation of the seriousness of the
problem, not the judge's, which is controlling.' " *Britton* v. *Zoning Bd. of Ap-
peals of Gloucester*, 59 Mass. App. Ct. at 76, quoting from *Copley* v. *Board of
Appeals of Canton*, 1 Mass. App. Ct. 821 (1973).

increased traffic as detrimental to that population. In sum, it was rational for the board to conclude that the detriment arising from the proximity to schools outweighed the potential benefits, which included employment opportunities to the community and convenience to patrons of the plaintiffs' pharmacy. The judge was correct when he determined, in his second decision, that the board's decision was entitled to deference.

Given our conclusion that neither of the board's decisions rested upon a legally untenable ground, we need not consider the plaintiffs' argument that the judge should have ordered the board to grant the permit in his first decision.

*Judgment affirmed.*